## A94A0940. ROSS v. THE STATE.
(448 SE2d 769)

SMITH, Judge.

Pamela Martin Ross was convicted of prostitution, OCGA § 16-6-9, after a trial without a jury. She appeals, arguing that the evidence was insufficient to convict her. The trial court found that no other reasonable conclusion could be drawn from the evidence presented by the State. We agree and affirm.

Viewed to support the court's judgment, the evidence shows that an undercover officer placed a call to an "escort service" advertising in the local "yellow pages" telephone directory. The officer asked to have a "lady sent up" and requested that she be a petite blonde. A conversation ensued concerning money, and the officer was informed that the fee would be $200 for one hour.

Shortly thereafter the officer received a call from a woman identifying herself as "Monica." The caller discussed how long it would take for her to get to the hotel, verified the room information, and asked for his name. Approximately one hour later, Ross appeared at the officer's hotel room and identified herself as "Monica." The officer recognized her voice as being the same person who had called earlier. Ross was dressed in a white jumpsuit and brought only her purse. Ross told the officer that she had to use the bathroom and that he should get comfortable. The officer removed his shirt and sat on the bed wearing cut-off sweat shorts.

When Ross returned from the bathroom, she began to check the room and paid particular attention to a go-between door for the connecting room. According to the officer, Ross then told him that "we need to go ahead and take care of the money." The officer paid Ross $200. Ross then telephoned the escort service, confirming that she had arrived at the officer's location, everything was okay, and to "start the time."

Without any prompting from the officer, Ross began to disrobe, revealing lacy high-cut lingerie. While disrobing, Ross removed a small black bag from her purse and placed it on the nightstand. Within about 30 to 40 seconds Ross had removed all of her clothing. She then sat down on the bed very close to the officer. The officer then asked Ross whether she had brought any condoms. According to him, she replied: "Yes, everything's taken care of," nodding toward the black bag that she had previously removed from her purse and placed on the nightstand. Believing that any further steps would necessarily involve physical acts, and likewise believing that he already

had sufficient evidence to charge Ross with prostitution, the officer then signaled to the surveillance team to effect the arrest by stating the pre-arranged code phrase "Let's get busy." Ross, unaware of the true purpose of the officer's statement, responded: "Okay." A second officer then entered the room and advised Ross that she was under arrest for prostitution. The black bag Ross placed on the nightstand was seized by the arresting officers. It was found to contain, among other items, six non-lubricated condoms, two "large" condoms, one empty condom package, five rubber gloves, contraceptive gels, jellies, and sponges, and one "feminine wash."

"A person commits the offense of prostitution when [s]he performs or offers or consents to perform an act of sexual intercourse for money." OCGA § 16-6-9. Ross argues that her actions did not indicate the intent to engage in an act of prostitution beyond a reasonable doubt. She points out that the undercover officer agreed to pay $200 to the *agency*, not to her, and that no other sums were negotiated; that the officer did not suggest that he wished for her to perform sex for money during their telephone conversation or at any time; that there was never any physical contact; that there was no evidence of sexual paraphernalia known to the officer until after she was arrested; and essentially that the only evidence indicating that a sexual act was about to take place was solely in the mind of the undercover officer.

"The rule as to the sufficiency of circumstantial evidence to support a conviction is that the evidence excludes every *reasonable* hypothesis except the guilt of the accused, not that it removes every possibility of innocence of the crime charged. [Cits.]" *Bailess v. State*, 168 Ga. App. 56, 57 (308 SE2d 61) (1983). It is certainly *possible* that Ross was to receive no benefit at all from the $200 she collected on the escort service's behalf, but that possibility is a patently unreasonable one. It is likewise possible that Ross did not intend to signal to the officer her willingness to engage in an act of sexual intercourse in return for the $200 fee. However, it is unreasonable to conclude that Ross was not aware that she was communicating such an intent by removing all of her clothing, sitting very close to the officer, indicating to him that she had brought condoms for him, and finally by indicating agreement to the suggestion that she and the officer *together* should "get busy."

Moreover, we find no significance in the fact that the officer did not confirm the contents of the black bag until after Ross was arrested. The relevant question is whether *Ross* knew what was in the bag when she removed it from her purse, placed it on the nightstand, and indicated to the officer that condoms were contained therein; it is not whether the officer had confirmed that the bag contained sexually oriented items before the arrest was made. Ross does not suggest that she was unaware of the contents of the bag, nor could such a sugges-

tion be reasonably entertained under the circumstances.

The trial court was authorized by the evidence presented to exclude other possible hypotheses as unreasonable and find that Ross knowingly and intentionally indicated to an undercover officer her consent to engage in an act of sexual intercourse in exchange for money in violation of OCGA § 16-6-9. OCGA § 24-4-6; *Bailess*, supra.

*Judgment affirmed. Pope, C. J., and McMurray, P. J., concur.*

DECIDED SEPTEMBER 22, 1994.

*Daniel L. Dean*, for appellant.

*Keith C. Martin, Solicitor, Michael P. Baird, Assistant Solicitor,* for appellee.